IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

---

PAUL SHAMON,

Plaintiff,

v.

LONG TERM DISABILITY INCOME PLAN OF BANK OF MONTREAL/HARRIS and BMO HARRIS BANK, NA as the Administrator of the Bank of Montreal Long Term Disability Plan

Defendants.

---

COMPLAINT

---

Plaintiff, Paul Shamon ("Shamon"), by and through his undersigned attorneys, states and alleges as follows:

JURISDICTIONAL AND GENERAL ALLECTIONS

1. Shamon's claims against the Long Term Disability Income Plan of Bani of Montreal/Harris (the "Plan") and BMO Harris Bank, NA ("BMO") arises from the Plan's denial of Shamon's application for full long term disability ("LTD") benefits.

2. This civil action is brought pursuant to Sections 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §1132(a)(1)(B) and (a)(3) to recover and obtain benefits due Shamon under the terms of the Defendant Plan to enforce and clarify Shamon's rights to future benefits under the terms of the Plan. Shamon seeks relief, including but not limited to: payment of benefits, reinstatement of benefits, prejudgment interest, costs and reasonable attorneys' fees.

3. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 1132(a), (e), (f) and (g).

4. The amount in controversy, *i.e.*, the value of the denied benefits alone, exceeds $75,000,

5. Jurisdiction and venue are also proper pursuant to the aforementioned sections of ERISA as well as 28 U.S.C. §1331 as this action involves a federal question, and 28 U.S.C. §1332(a)(1).

6. Prior to initiating this lawsuit, Shamon has exhausted all administrative remedies available to him under the terms of the Plan.

7. At all relevant times, Shamon was a resident of the State of Colorado.

8. Defendant, BMO,is a United States Bank, based in Illinois, that conducts business in the State of Colorado. BMO is being sued in its capacity as the Plan sponsor and Plan administrator within the meaning of Section 3(16) or ERISA, 29 U.S.C. §1002(16).

9. The Hartford is the claims administrator for the Plan.

10. The Plan is an employee welfare benefit plan regulated by ERISA, pursuant to which Shamon is entitled to benefits.

11. Shamon was, at all times relevant to this matter, and continues to be, a beneficiary of the Plan.

12. Defendant is doing business and conducts business in this District of Colorado, in that it covers participants residing and seeking welfare benefits in this judicial district. Further, Shamon was employed by BMO in this district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. 1132(e)(2) and 28 U.S.C. 1391.

## FACTS

13. Shamon has been employed by BMO, working and based in Colorado, since December 31, 2010.

14. As an employee of BMO, Shamon became entitled to benefits under the terms and conditions of the Defendant Plan.

15. As an employee of BMO and a participant in the Plan, Shamon had the option to purchase enhanced benefits from the Plan. Shamon exercised this option and since December 31, 2010, had additional premiums for the enhanced benefits withheld from his pay and paid directly to the Plan.

16. In December 2012, Shamon received the initial diagnosis of type 1 diabetes (an autoimmune disease).

17. In March 2013, Shamon was diagnosed with hypothyroidism (an autoimmune disease).

18. Beginning in 2013, Shamon received medical treatment and care from the Denver Endocrinology, Diabetes & Thyroid Center, P.C., under the primary care of Dr. Greg Lund, for autoimmune disease.

19. Effective January 1, 2014, the terms of the Plan were amended to place a 24-month maximum benefit on disabilities due to "subjective disorders and related conditions…" including chronic fatigue syndrome." Prior to that time, the Plan did not place a limit on disabilities caused by subjective illnesses. Neither BMO, the Plan, nor The Hartford, ever notified Shamon of the pending or actual change to LTD benefits.

20. Being a loyal corporate soldier, despite intense pain and suffering, Shamon continued to work throughout 2014.

21. In February 2015, Shamon contacted BMO's human resources department, applied for disability benefits and began receiving short term disability benefits.

22. In March 2015, Shamon was diagnosed with prostate cancer and in May 2015 underwent a prostatectomy.

23. Since before the onset of his symptoms and continuing to the present, Shamon has been under the care of Dr. Carol Spies who has served as his primary care physician. Among other medical maladies, Dr. Spies has provided medical care and treatment to Shamon for: insulin dependent type 1 diabetes, hypothyroidism, hypercholesterolemia, sleep apnea and depression.

24. Initially, on March 5, 2015, Shamon met with a physician's assistant, Patricia Anne Boulsoun at Internal Medicine Anschutz. The record before BMO as of the date it considered Shamon's application was that Ms. Boulshoun's diagnosis of Shamon was that he was suffering from autoimmune disease.

25. By letter dated October 29, 2015, The Hartford informed Shamon that his application for disability benefits was being denied because The Hartford and its internal reviewer had determined that Shamon was "capable of performing full time work for 8 hours per day; 40 hours per week without restriction."

26. Faced with the denial, Shamon was required to retain counsel and appeal the claim denial. By letter dated February 5, 2016 (including attachments), Shamon appealed the denial of his application for LTD benefits and, among, other points addressed in the letter, highlighted the fact that the internal claim reviewer ignored Shamon's consistent medical records that revealed, among other things, that Shamon could not walk for more than one-half hour and that he could not sit for more than one hour at a time.

27. As of the date BMO considered Shamon's application the consistent diagnosis of every member of the medical team treating Shamon was that he was primarily suffering from autoimmune disease with a condition complicated by his other medical maladies.

28. Thereafter, Shamon, with the assistance of counsel, appealed the denial of LTD benefits.

29. By letter dated March 17, 2016, the Hartford informed Shamon that he was being awarded LTD benefits. Later, by letters dated April 6, 2016 and April 13, 2016, the Hartford informed Shamon that his LTD benefits would be limited to twenty-four (24) months based on The Hartford's conclusion that CFS was the cause of Shamon's disability.

30. Shamon appealed that decision and by letter dated October 31, 2016, The Hartford informed Shamon that his appeal of the twenty-four month limitation was being denied.

31. The October 31 letter included a report that was prepared by The Hartford by R. Bruce Williams in which he concluded that chronic fatigue syndrome is a separate and unrelated impairing condition from autoimmune disease.

32. Shamon exhausted his administrative remedies with The Hartford when he appealed that decision to the BMO Benefits Committee.

33. Shamon appealed the decision made by The Hartford following the Plan's and the Hartford's appeal procedures. As part of the appeal, Shamon obtained and submitted updated medical records to the Hartford and offered to present himself for an independent medical examination.

34. The Hartford declined Shamon's offer of an independent medical examination.

35. During the administrative review of Shamon's application, the internal physician reviewer hired by The Hartford, opined that "[t]he history and physical examination in this case don't appear to support the definition of chronic fatigue syndrome as outlined by the CDC."

36. In 2016, Shamon, at his own expense, underwent a thorough functional capacity evaluation that was performed by Sherry Young, OTR, at Starting Point Rehabilitation. Ms. Young's conclusion is that Shamon is completely and totally disabled from his own occupation, any occupation for which he would reasonably be qualified and any occupation.

37. At all relevant times, Shamon has been and continues to be totally disabled.

38. The consistent medical opinion of Shamon's treating physicians, since prior to the date his claim was considered by BMO, is a primary diagnosis of autoimmune disease.

39. Autoimmune disease is not a "subjective disorder" as that term in defined in the Plan.

40. Shamon suffers from a myriad of conditions including sleep apnea, hypothyroidism, depression, prostate cancer and autoimmune diseases. The compound effect of all of these conditions, each of which alone could likely render Shamon disabled, is that Shamon is disabled.

41. The consistent medical opinion of Shamon's treating physicians, since prior to the date his claim was considered by BMO, is that the autoimmune disease presents itself with secondary symptoms such as extreme fatigue that are exacerbated by his secondary conditions.

42. Beginning during the time his application for LTD benefits was being considered by the Hartford, Shamon offered to present himself for an independent medical examination (IME) so that the Hartford and representatives of the Defendant could make a fair, complete and

accurate assessment of Shamon's medical condition and his application for LTD benefits. Shamon repeated his offer to present himself for an IME throughout the application process.

43. Each of Shamon's repeated offers to present for an IME was summarily rejected by the Hartford, the Plan and its representatives.

44. To the contrary, during the initial application review process in 2015, The Hartford had Shamon's medical records reviewed by Dr. Joseph Palermo, DO, who The Hartford refers to as an independent medical reviewer.

45. Upon information and belief, Dr. Palermo is not independent; rather, he has a business relationship with The Hartford pursuant to which he receives significant income and is therefore motivated to recommend denial of claims for benefits.

46. Similarly, during the administrative appeal process, in 2016, The Hartford had the medical records reviewed by Dr. Ben Hur Mobo, who The Hartford refers to as an independent medical reviewer.

47. Upon information and belief, Dr. Ben Hur Mobo is not independent; rather, he has a business relationship with The Hartford pursuant to which he receives significant income and is therefore motivated to recommend denial of claims for benefits.

48. Contemporaneously with his final administrative appeal to BMO, Shamon reiterated his offer to have himself, his medical team and his counsel travel to personally meet with the Plan representatives to fully, completely and with full disclosure, review and discuss Shamon's medical condition.

49. Shamon's offer was rejected by BMO.

50. BMO retained Dr. R. Bruce Williams to review the file and contact physicians.

51. When Dr. Williams spoke with members of Shamon's medical team, he did so, not in a neutral fact-finding manner, but in an adversarial manner.

52. Despite his adversarial manger, among other findings, Dr. Williams' concluded that chronic fatigue syndrome is a separate and unrelated impairing condition from autoimmune disease.

53. Upon information and belief, Dr. Williams is not independent; rather, he has a business relationship with BMO pursuant to which he receives significant income and is therefore motivated to recommend denial of claims for benefits.

54. The actions of BMO and its representatives set forth above were arbitrary, capricious and designed to create a plausible basis for denying Shamon the LTD benefits he is entitled to.

<u>FIRST CLAIM FOR RELIEF</u>
(ERISA SECTION 502(a)(1)(B)

55. Shamon, by this reference incorporates the allegations of Paragraphs 1 through 54 of this Complaint.

56. Defendant wrongfully denied Shamon's claim for long term disability benefits in the following respects:

a. Failure to pay long term disability benefits at a time the Defendant knew or should have known that Shamon was entitled to those benefits under the terms of the Plan.

b. Failure to properly and adequately investigate the merits of the Plaintiff's claims for long term disability benefits;

c. Failure to provide Shamon with a full and fair review pursuant to 29 C.F.R. §2560.501-1 (h)(3)(iii) by failing to rely on the medical opinions of Shamon's medical providers in determining that Shamon is suffering from CFS.

57. Following the limitation placed on the LTD benefits awarded to Shamon, he has exhausted all administrative remedies under ERISA and the Plan. Plaintiff has performed all duties and obligations required of him under the Plan.

58. As a direct and proximate result of the limitations placed on Plantiff's LTD benefits, Plaintiff has been damaged in an amount to be proven at trial. The damage includes, but is not limited to: (a) loss of LTD benefits through the age of 65, (b) loss of health, dental and vision insurance and benefits, (c) increased costs for administering Shamon's retirement and pension accounts, (d) loss of a life insurance policy, (e) costs and (f) reasonable attorneys' fees.

59. As a direct and proximate result of Defendant's improper limitation of the LTD benefits awarded to Shamon, he has incurred and will continue to incur costs and attorneys' fees. Pursuant to 29 U.S. C. 1132(g)(1), Shamon is entitled to recover the costs and reasonable attorneys' fees he has incurred and will continue to incur.

60. The wrongful conduct of Defendant has created uncertainty where none should exist, therefore, Shamon is entitled to enforce his rights under the terms of the Plan and clarify his rights to future benefits under the terms of the Plan.

## SECOND CLAIM FOR RELIEF
(ERISA SECTION 502(a)(3))

61. Shamon, by this reference, incorporates the allegations of Paragraphs 1 through 60 of this Complaint.

62. As a direct and proximate result of the failure of the Defendant to award Shamon his full LTD benefits (*i.e.*, by limiting the benefits awarded to two years), Shamon has been damaged by an amount to be proven at trial.

63. Shamon is entitled to and requests that the Court grant him the following equitable relief:

a. Restitution of all past benefits due to Shamon along with prejudgment and post-judgment interest.

b. A mandatory injunction requiring Defendant to immediately quality Shamon for full LTD benefits until the earlier of Shamon's turning age 65 or Shamon's improvement in physical condition to the point where he is medically determined to no longer be disabled.

c. Such other and further relief as the Court deems just, necessary and proper to protect Shamon's interests as a participant in the Plan.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Paul Shamon, requests that the Court enter judgment in favor of Shamon and against the Defendant as follows:

1. Clarifying Shamon's rights to past and future benefits under the terms of the Plan;

2. Awarding Shamon his costs and reasonable attorneys' fees' incurred in this matter pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1);

3. Awarding Shamon damages he has sustained by the Defendants' breach of the Plan;

4. Requiring the Plan to pay Shamon the full amount of Long Term Disability benefits available to him under the Plan until the earlier of Shamon's turning age 65 or Shamon's no longer being disabled;

5. Awarding Shamon such other and further relief as the Court deems just and proper.

DATED this 24th day of April, 2017.

*/s/ David B. Seserman* .
David B. Seserman
Brosseau Bartlett Seserman, LLC
6455 S. Yosemite Street, Suite 750
Greenwood Village, CO 80111
Telephone: 303.812.1200
dseserman@bbs-legal.com

*Attorneys for Plaintiff*

Plaintiff's Address:
1752 South Sherman Street
Denver, CO 80210